DOWNEY, Judge.
Appellant, Fourth Commerce Properties Corporation, seeks reversal of a final summary judgment in favor of appellee Pioneer National Title Insurance Company, finding that Pioneer’s mortgagee insurance policy did not afford coverage under the peculiar facts of the case.
In 1975 Le Chalet, Inc., as owner of certain realty, executed and delivered a construction loan mortgage to Virginia National Bank (VNB). Pioneer insured that mortgage. Thereafter, in 1979, Steckmar National Realty Corp. entered into an agreement to purchase the aforementioned realty from Le Chalet, which agreement was recorded in the public records of Palm Beach County. That agreement was never performed by the parties and ended in litigation which Steckmar lost. Nevertheless, the agreement remained of record. On April 1, 1980, VNB assigned the insured mortgage to Fourth Commerce. Because Le Chalet was in default on the mortgage and note, Fourth Commerce initiated a suit to foreclose the mortgage against Le Chalet. Fourth Commerce included Steckmar in the foreclosure suit as a defendant because of the Le Chalet-Steckmar purchase and sale agreement that was filed in the public records. Steckmar responded to the foreclosure complaint of Fourth Commerce by answer, affirmative defenses and counterclaims. Paragraph 13 of the Fourth Commerce complaint alleged that the mortgage in question was executed on August 14, 1975, by Conrad J. DeSantis, the fee simple owner of said property. It was further alleged that the mortgage was recorded in the public records of Palm Beach County. Steckmar separately answered each paragraph of the complaint. As to paragraph 13 of the complaint, the answer alleged: “Denied except as to the existence of Public Records.” Counsel for Fourth Commerce informed Pioneer of the Steck-mar answer and counterclaims, but did not demand that Pioneer enter the litigation. After Fourth Commerce successfully obtained a final judgment of foreclosure, a copy of which had been furnished Pioneer, Steckmar unsuccessfully appealed that judgment. Thereafter, Fourth Commerce notified Pioneer of its claim for costs and attorney’s fees incurred in the foreclosure.
The policy in question provided coverage as follows:
*309 SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B IN THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, PIONEER NATIONAL TITLE INSURANCE COMPANY ... insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys’ fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:

2. Any defect in or lien or encumbrance on such title;

5. The invalidity or unenforceability of the lien of the insured mortgage upon said estate or interest except to the extent that such invalidity or unenforceability, or claim thereof, arises out of the transaction evidenced by the insured mortgage and is based upon
a. usury, or
b. any consumer credit protection or truth in lending law;
6. The priority of any lien or encumbrance over the lien of the insured mortgage; ....
The duty to defend is set forth in section 3(a) of the “Conditions & Stipulations” of the policy as follows:
The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or defenses, restraining orders or injunctions interposed against a foreclosure of the insured mortgage ... to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.
Thus, it appears that Pioneer agreed to defend Fourth Commerce, the insured, “in all litigation consisting of ... defenses, ... interposed against a foreclosure of the insured mortgage ... to the extent that such litigation is founded upon an alleged defect ... or other matter insured against by this policy.”
A great deal of the argument between the parties focuses upon the use of the word “defenses” as used in the policy. Fourth Commerce contends that Pioneer was required to enter the litigation and represent Fourth Commerce when Steck-mar denied the allegations of paragraph 13 of the complaint, which alleged that DeSan-tis, the owner of the property, executed the mortgage. Pioneer disagrees and argues that such a denial that the mortgage was properly executed by the owner of the property is not a “defense” within the terms of the policy; that in order to come within that term the defensive matter would have to be asserted by an affirmative defense. Each party cites definitions, rules and text material that favors his view. However, none of them appear controlling.
In the context of this case it appears the term “defenses” is ambiguous and thus must be construed against Pioneer. Travelers Insurance Company v. Bartoszewicz, 404 So.2d 1053 (Fla.1981). Furthermore, since the undertaking by Pioneer assured the validity of the mortgage as a lien on the property (subject to the exception provisions of the policy) it appears to us the issue triggering coverage was Steckmar’s attack on the validity of the mortgage. Steckmar denied that the owner of the property had executed the mortgage. If Fourth Commerce was unable to prevail on that issue, it could not successfully foreclose the mortgage. Whether Steckmar succeeded in defending against the foreclosure by defending against the allegations of paragraph 13 via a denial thereof, or by asserting in a separate affirmative defense that the owner had not executed the mortgage, is of no consequence. Whether the issue was created by a denial in the answer or an affirmative defense in the answer, it was the insurer’s obligation to litigate the issue.
Finally, Pioneer’s contention that a favorable holding for Fourth Commerce in *310 this case would wreak havoc in the title insurance industry is not persuasive. The industry writes the policy and it is up to it, or the individual companies, to describe the coverage undertaken.
Accordingly, the judgment appealed from is reversed and the cause is remanded with instructions to reinstate the cause, and for further proceedings.
REVERSED AND REMANDED, with directions.
WALDEN, J., concurs.
LETTS, J., dissents with opinion.