524 So.2d 490 (1988)
AUTO-OWNERS INSURANCE COMPANY, Appellant/Cross Appellee,
v.
Mary Jo BROCKMAN, Etc., and the Ohio Casualty Insurance Company, et al., Appellees/Cross Appellees, and J & M Hentzel Insurance Agency, Donald F. and
Carolyn Thompson, Gmac Leasing Corporation, and American Fire and Casualty Company, Appellees/Cross Appellants.
Nos. 87-944, 87-1151, 87-1213, 87-1235 and 87-1278.
District Court of Appeal of Florida, Fifth District.
May 5, 1988.
*492 F. Bradley Hassell of Eubank, Hassell & Miles, P.A., Daytona Beach, for Auto-Owners Ins. Co.
Alton G. Pitts of Alton G. Pitts, P.A., Orlando, for Ohio Cas. Ins. Co. and American Fire & Cas. Co.
Brian R. Toung of Landis, Graham, French, Husfeld, Sherman & Ford, P.A., DeLand, for J & M Hentzel Ins. Agency.
J. Lester Kaney of Cobb & Cole, Daytona Beach, for GMAC Leasing Corp., Robert James Kirk and Donald F. and Carolyn Thompson.
David D. Fuller, Jr., of Kennedy and Fuller, P.A., South Daytona, for Donald F. and Carolyn Thompson.
No Appearance for Mary Jo Brockman.
COWART, Judge.
Brockman was a passenger on a motorcycle operated by Glenn which on July 17, 1984, collided with a Corvette automobile operated by Kirk. Brockman sued Glenn and Kirk, alleging each was negligent in causing the collision. The Corvette was owned by GMAC and leased to Mr. and Mrs. Thompson and subleased by them to Controlled Communications, a corporation wholly owned by the Thompsons. Kirk was operating the Corvette with Mrs. Thompson's permission. Kirk was the sole stockholder and president of R.K. Marketing, a corporation which owned two vehicles with liability insurance issued by Auto-Owners. On June 14, 1984 (33 days before the accident), the Thompsons requested their insurance agent, Hentzel Insurance Agency, to issue two policies: (1) a personal automobile liability policy that was issued as of June 14, 1984 (33 days before the accident) by American Fire and (2) an umbrella policy of personal excess liability insurance that was issued on September 11, 1984 by Ohio Casualty, effective August 14, 1984 (28 days after the accident). Controlled Communications had a business automobile policy issued by USF&G.
Through joinders, interventions, third party claims, and separate actions in five cases, the various rights and obligations of the insurance companies and of Hentzel Insurance Agency became the subject of a request for a declaratory decree. Various parties appealed the trial court's ruling and the appeals were consolidated. We hold as follows:
(1) The trial court did not err in determining the priority of coverage between the various insurers because the relationships of each coverage in each policy were inherently involved in adjudicating the insurance coverage questions presented by the request for declaratory judgment.
(2) The trial court erred in adjudicating that GMAC, as the owner and lessor of the Corvette, provide the "first layer of coverage" of $10,000 required by the financial responsibility statutes, sections 324.021(7) and 324.151(1)(a), Florida Statutes. On its face, the lease agreement between GMAC and the Thompsons complied with the requirements of section 627.7263, Florida Statutes, and shifted primary coverage from GMAC to the Thompsons' insurers up to their full policy limits.
(3) The trial court erred in adjudicating that Auto-Owners provide the "second layer" of coverage because Kirk, although an actively negligent party, was not operating either of the vehicles specifically covered by Auto-Owners and Kirk was not *493 a named insured as was necessary for coverage under the "drive other cars clause" in Auto-Owner's policy. Corporations are entities legally separate and distinct from their officers and stockholders; therefore, Kirk was not a named insured under a policy issued to R.K. Marketing as named insured merely because of his office and stock ownership interest. There is no policy "ambiguity" as to this. See American States Insurance Company v. Kelley, 446 So.2d 1085 (Fla. 4th DCA 1984), rev. denied, 456 So.2d 1181 (Fla. 1984); Hanisch v. Clark, 200 So.2d 601 (Fla. 3d DCA 1967).
(4) The trial court implicitly, and correctly, adjudicated that the existence of the USF & G policy, providing business auto insurance in favor of the corporation Controlled Communications, did not activate the termination clause in the American Fire policy, providing personal coverage to the Thompsons, because the two policies and the insureds were not "similar" within the meaning of the termination clause in the American Fire policy. Controlled Communications is not the mere alter ego of the Thompsons but is a legally separate and distinct entity from the Thompsons as officers and stockholders just as R.K. Marketing is a legally separate and distinct entity from Kirk.
(5) The final judgment below implicitly rejected the claim that the Corvette was not covered by the American Fire policy because the insureds (the Thompsons) did not request American Fire to insure the Corvette within thirty days after the Thompsons acquired an ownership interest in the Corvette. There is competent, substantial evidence that the Thompsons, within the said thirty day period, advised American Fire's agent of their acquisition of the Corvette and that the agent understood the Thompsons were calling to request coverage on the Corvette notwithstanding that the agent advised the Thompsons that American Fire did not insure Corvettes.
(6) The trial court correctly adjudicated that American Fire was precluded from asserting its "prejudicial late notice" coverage defense for failure to comply with section 627.426(2), Florida Statutes, which denies coverage defenses to insurers unless the insurer takes certain timely action. Specifically, from the record, the trial court properly found that the nonwaiver agreement was not obtained from the insured "following full disclosure of the specific facts and policy provisions upon which the coverage defense [was] asserted" as provided in section 627.426(2)(b)(2), Florida Statutes.
(7) There is ample evidence in the record to support the trial court's adjudication that the Thompsons did not order or direct, and that Ohio Casualty did not by binder or otherwise agree, that the requested personal excess coverage would be effective as of June 14, 1984, the date the coverage was requested. The Ohio Casualty policy, being an occurrence policy with an effective date of August 14, 1984, did not provide coverage as to the prior accident on July 17, 1984.
(8) The trial court implicitly found that Hentzel Insurance Agency was not liable to the Thompsons because the personal excess coverage was not obtained on a date effective before the accident. There is evidence from which the trial court could have concluded that the insurance agency exercised reasonable skill and care in providing the requested coverage in a timely manner as the Thompsons did not request that the coverage be effective at any particular time.
The trial court's finding that GMAC provide the first layer of coverage, and that Auto-Owners provided coverage to Kirk as to the accident (paragraphs 2 and 3 above), are reversed; all other adjudications of the trial court are affirmed.
The Thompsons have filed a motion for the allowance of attorney's fees in connection with the appeal by American Fire. Because section 627.428, Florida Statutes, provides for the award of attorney's fees on appeal to a successful insured, the motion *494 is granted and remanded to the trial court for determination of the amount of attorney's fees to be awarded for the appellate proceedings.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
COBB and DANIEL, JJ., concur.