OPINION
Appellant, Aetna Casualty and Surety Company ("Aetna"), appeals from a decision of the Butler County Court of Common Pleas granting summary judgment in favor of appellees, Marie Hill, David Hill, James Hill, and Stony Ridge Inn South Ltd. ("Stony Ridge").
Frank Bruce was a regular patron of Stony Ridge, a bar and restaurant located in Monroe, Ohio. When Bruce entered Stony Ridge on the evening of September 3, 1993, he gave his car keys to an employee. During the next several hours, Bruce consumed "three or four shots of whisky" and "at least half a dozen beers." At approximately 11:15 p.m., Bruce obtained his car keys from the Stony Ridge employee and left the bar. Shortly thereafter, Bruce collided with a car being driven by David Hill. As a result of the collision, David Hill and his passenger, Marie Hill, suffered injuries.
On August 1, 1994, the Hills filed a complaint against Stony Ridge, claiming that their injuries were proximately caused by the negligence of Stony Ridge.[1] The complaint alleged that employees of Stony Ridge negligently served alcohol to Bruce when he was intoxicated. In addition, the complaint alleged that employees of Stony Ridge negligently entrusted car keys to Bruce when he was intoxicated.
At the time of the accident, Stony Ridge was insured by Aetna under a one million dollar Comprehensive General Liability Policy ("Liability Policy") and a five hundred thousand dollar Business Auto Policy ("Auto Policy"). In addition, Stony Ridge had a Liquor Liability Policy ("Liquor Policy") with Beverage Retailers Insurance Co. ("Beverage Retailers"). After the Hills filed their complaint, Stony Ridge notified Aetna and Beverage Retailers of the lawsuit. Aetna denied coverage under both the Liability Policy and the Auto Policy and refused to defend Stony Ridge. Although Beverage Retailers initially defended Stony Ridge against the Hills' claims, Beverage Retailers filed for bankruptcy during the early stages of the lawsuit and was forced to discontinue the defense.
Based on stipulations of the Hills and Stony Ridge, the trial court determined that Stony Ridge was liable for negligently serving alcohol and negligently entrusting car keys to Bruce when he was intoxicated. Accordingly, the trial court entered a $450,000 judgment against Stony Ridge on January 26, 1996. Due to Beverage Retailers' bankruptcy, the Hills only received partial satisfaction of the judgment from Beverage Retailers in the amount of $140,000. In addition, the Hills received partial satisfaction of the judgment from Stony Ridge in the amount of $50,000.
On April 19, 1996, the Hills filed a supplemental complaint against Aetna pursuant to R.C. 3929.06, seeking to collect the unsatisfied portion of the judgment. On April 26, 1996, Stony Ridge also filed a supplemental complaint against Aetna seeking reimbursement for the $50,000 that it had paid to satisfy the Hills' judgment and reimbursement for costs that it had incurred in defending the underlying action. The parties subsequently filed cross-motions for summary judgment.
After finding that both the Liability Policy and the Auto Policy provided coverage for the Hills' claims against Stony Ridge, the trial court denied Aetna's motion for summary judgment and granted summary judgment in favor of the Hills and Stony Ridge. The trial court ordered Aetna to satisfy the remaining portion of the Hills' judgment in the amount of $260,000. In addition, Aetna was ordered to reimburse Stony Ridge for the costs incurred in defending the underlying action and the $50,000 that Stony Ridge had paid to satisfy the Hills' judgment. Aetna timely appealed and assigns a single assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF SUPPLEMENTAL DEFENDANT-APPELLANT IN OVERRULING ITS MOTION FOR SUMMARY JUDGMENT AND IN GRANTING THE MOTIONS FOR SUMMARY JUDGMENT OF SUPPLEMENTAL PLAINTIFFS-APPELLEES.
In its sole assignment of error, Aetna asserts that the trial court erred by denying its motion for summary judgment and finding that Aetna had a duty to indemnify and a duty to defend Stony Ridge under the Liability Policy and the Auto Policy. When reviewing a trial court's ruling on summary judgment, an appellate court must follow the standard set forth in Civ.R. 56(C), which provides that summary judgment is appropriate where (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds construing the evidence in the light most favorable to the nonmoving party could reach but one conclusion which is adverse to the nonmoving party. Welco Ind., Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344. The appellate court conducts an independent review of the record and stands in the shoes of the trial court. Jones v. Shelly Co. (1995),106 Ohio App.3d 440, 445.
Aetna argues that it does not have a duty to indemnify Stony Ridge under the Liability Policy, because the Hills' claims fall within the terms of a "liquor liability" exclusion. The Liability Policy provides:
 SECTION 1 — COVERAGES COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
2. Exclusions
This insurance does not apply to:
* * *
 c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
 (1) Causing or contributing to the intoxication of any person;
 (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
 (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
 This Exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.
Under the terms of the insurance policy, the Hills' claim that Stony Ridge negligently served alcohol to Bruce when he was intoxicated clearly falls within the "liquor liability" exclusion. However, the trial court concluded that the Liability Policy afforded coverage because the Hills' claim that Stony Ridge negligently entrusted car keys to Bruce did not fall within the "liquor liability" exclusion. The trial court reasoned that the exclusion did not apply since the claim of negligent entrustment was independent of the serving of alcohol so that "to breach the duty imposed under this theory, one does not have to be engaged in the business of distributing, selling or serving alcoholic beverages."
In determining whether a "liquor liability" exclusion precludes coverage for claims against a bar, courts have analyzed whether the claims were dependent and arose from the sale and service of alcohol. See Kovesdy v. Utica Fire Ins. Co. (May 1, 1997), Cuyahoga App. No. 70678, unreported; Prince v. Buckeye Union Ins. Co. (Dec. 2, 1992), Richland App. No. 92-CA-6, unreported. In Kovesdy, a bar was sued for the wrongful death of a patron who died in an automobile accident caused by an underage patron who drank alcohol at the bar. Kovesdy at 2. In order to avoid the application of a "liquor liability" exclusion, the plaintiffs argued that the bar's liability did not arise out of the sale or service of alcohol, but rather from separate negligence before and after the sale of alcohol. Id. at 4. The separate acts of alleged negligence included permitting underage persons to enter the bar, failing to check identification, permitting the individuals to leave the premises, and failing to notify the police. Id. The Eighth District Court of Appeals concluded that the "liquor liability" exclusion unambiguously denied coverage for all of the claims because the claims were dependent and arose from the sale and service of alcohol. Id. at 5-8.
In Prince, an employee of a bar confiscated keys from a patron because the employee knew that the patron was too intoxicated to drive. Prince at 2. Later in the evening, the intoxicated patron was able to recover his car keys and was involved in an automobile accident. Id. Prince, a passenger in the intoxicated patron's car, was injured in the accident and filed a complaint that asserted two claims against the bar. Id. First, Prince alleged that the bar negligently served the patron when he was intoxicated. Id. Second, Prince alleged that after the intoxicated patron had been prevented from driving by confiscation of his car keys, the bar "negligently returned his keys or allowed others to do so, and failed to notify authorities or take other action to protect the public." Id. at 2-3.
The Fifth District Court of Appeals held that a "liquor liability" exclusion precluded coverage for Prince's first claim against the bar. Id. at 4. However, the Fifth District found that the "liquor liability" exclusion did not preclude coverage for Prince's second claim because negligently returning keys to an intoxicated person "is totally independent of the sale or service of alcohol, and of engaging in the business of selling alcohol." Id. at 5.
Although we agree that the negligent entrustment of car keys to an intoxicated person may be independent and separate from the sale or service of alcohol, the present case does not involve such a factual scenario. The Hills would not have a claim that Stony Ridge negligently entrusted car keys to an intoxicated Bruce "but for" Stony Ridge's sale and service of alcohol to Bruce. Thus, like the claims in Kovesdy, the Hills' negligent entrustment claim is dependent and arose from Stony Ridge's sale and service of alcohol to Bruce.
From the clear language of the "liquor liability" exclusion in the Liability Policy, Aetna does not provide coverage for injuries for which Stony Ridge is held liable "by reason of * * * causing or contributing to the intoxication of any person" or "by reason of * * * the furnishing of alcoholic beverages to a person * * * under the influence of alcohol." Stony Ridge is only liable for the Hills' injuries, under the Hills' claim of negligent entrustment, by reason of causing or contributing to the intoxication of Bruce and/or by reason of furnishing alcohol to Bruce while he was under the influence of alcohol. Therefore, we conclude that the Hills' claim for negligent entrustment falls within the "liquor liability" exclusion and precludes coverage under the Liability Policy.[2] Accordingly, the trial court erred by finding that Aetna had a duty to indemnify Stony Ridge under the Liability Policy.
Aetna also argues that it did not have a duty to indemnify Stony Ridge under the Auto Policy because Bruce's automobile was not a covered auto under the policy. The Auto Policy provides:
SECTION II — LIABILITY COVERAGE
A. COVERAGE
 We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
* * *
1. WHO IS AN INSURED
The following are "insureds":
a. You for any covered "auto"
The declarations of the Auto Policy provide that covered autos, for purposes of liability coverage, include autos falling within category "1." The Auto Policy contains a Description of Covered Auto Designation Symbols which states that this category includes "any auto." The Auto Policy does not contain a definition of "any auto" and the trial court found that this term was ambiguous. Therefore, the trial court construed the Auto Policy strictly against Aetna and liberally in favor of Stony Ridge and determined that "any auto" included any auto for which Stony Ridge had some legal responsibility. Since Stony Ridge became legally responsible for Bruce's automobile by negligently entrusting keys to him while he was intoxicated, the trial court concluded that Bruce's automobile was a covered auto for which coverage was afforded under the Auto Policy.
If a term in an insurance policy is reasonably susceptible to more than one interpretation, the term will be construed strictly against the insurer and liberally in favor of the insured. Hacker v. Dickman (1996), 75 Ohio St.3d 118. However, when interpreting an insurance policy, the fundamental goal is to ascertain the intent of the parties by examining the language of the policy in its entirety. Boso v. Erie Ins. Co./Erie Ins. Exchange (1995),107 Ohio App.3d 481, 487. Thus, the rule requiring ambiguous language in an insurance policy to be construed against the insurer is inapplicable, where its application would produce results in conflict with the intent of the parties. Boso at 487, citing Morfoot v. Stake (1963), 174 Ohio St. 506, paragraph one of the syllabus.
We have not found any Ohio cases that interpret the term "any auto" in a business auto policy. However, courts from other jurisdictions have found that the term only includes autos that are owned, hired, or used by a business. See Mossman v. Transamerica Ins. Co. (D. Hawaii 1993), 816 F. Supp. 633; Bamber v. Lumbermens Mutual Casualty (Pa.Super. 1996), 680 A.2d 901. After reviewing the Auto Policy in its entirety, we find that this is the only reasonable interpretation of the term and is the meaning that was intended by the parties. Thus, the trial court erred by construing the term "any auto" strictly against Aetna and liberally in favor of Stony Ridge in determining that the term included any auto for which Stony Ridge had some legal responsibility.
Besides the "any auto" designation, the Description of Covered Auto Designation Symbols contains limited categories "2" through "9". These limited categories include autos that are owned, hired, or used by a business.[3] Thus, when the policy is read in its entirety, the term "any auto" logically refers to all autos falling within the subsequent limited categories "2" through "9". Bamber at 903. Further, since the policy is a "Business Auto Policy," it is unreasonable to interpret the term "any auto" so as to provide coverage for a patron's automobile that had no connection whatsoever with Stony Ridge's business. Therefore, we conclude that "any auto" only includes any auto that is owned, hired, or used by Stony Ridge. Accordingly, Bruce's automobile was not a covered auto and the trial court erred by finding that Aetna had a duty to indemnify Stony Ridge under the Auto Policy.
Aetna also argues that it did not have a duty to defend Stony Ridge against the Hills' claims under either the Liability Policy or the Auto Policy. The Liability Policy provides that Aetna will defend any suit seeking damages "because of `bodily injury' or `property damage' to which this insurance applies." Likewise, the Auto Policy provides that Aetna will defend any suit asking for "damages because of `bodily injury' or `property damage' to which this insurance applies" and that Aetna will not have a "duty to defend `suits' for `bodily injury' or `property damage' * * * not covered by this Coverage Form."
In Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108,114, the Ohio Supreme Court stated:
 Where the insurer represents to its insured that it will undertake the defense of any claim asserting injury within coverage, even where the claim is false or fraudulent, the duty to defend may arise solely from the allegations of the underlying complaint, regardless of the true facts as they are known to the insurer. However, since the appellee herein has promised only to defend claims for bodily injury or property damage "to which this coverage applies," the facts are determinative of the duty to defend. Where the true facts are such that the insured's conduct was outside the coverage of the policy, the claim is not one "to which this coverage applies," and the insurer has no obligation to defend the insured.
Since we have determined that neither the Liability Policy nor the Auto Policy provided coverage for the Hills' claims against Stony Ridge, we find that Aetna did not have a duty to defend Stony Ridge in the underlying suit. Accordingly, the trial court erred by finding that Aetna had a duty to defend and ordering Aetna to reimburse Stony Ridge for the costs of its defense.
In sum, we find that Aetna was not obligated to indemnify or defend Stony Ridge under either the Liability Policy or the Auto Policy. Therefore, Aetna is entitled to judgment as a matter of law, and the trial court erred by denying Aetna's motion for summary judgment. Aetna's sole assignment of error is sustained and summary judgment is granted in favor of Aetna pursuant to App.R. 12(B).
Judgment reversed.
POWELL, J., concurs.
YOUNG, P.J., concurs in part and dissents in part.
[1] Frank Bruce was also named as a defendant in the complaint. However, the Hills voluntarily dismissed their claims against Bruce on January 2, 1996.
[2] Although the Liability Policy specifically excluded claims arising from "liquor liability," Stony Ridge's Liquor Policy with Beverage Retailers was intended to afford coverage for this type of claim. See Kovesdy at 6; Auto-Owners Mut. Ins. Co. v. Dale's Bar Grill, Inc. (C.P. 1991), 62 Ohio Misc.2d 87. Unfortunately for Stony Ridge, the bankruptcy of Beverage Retailers left a gap in Stony Ridge's insurance coverage.
[3] The Description of Covered Auto Designation Symbols in the Auto Policy provides:
SYMBOL DESCRIPTION
1 = ANY "AUTO"
2 = OWNED "AUTOS" ONLY. * * *
3 = OWNED PRIVATE PASSENGER "AUTOS" ONLY. * * *
 4 = OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. * * *
5 = OWNED "AUTOS" SUBJECT TO NO-FAULT. * * *
 6 = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. * * *
7 = SPECIFICALLY DESCRIBED "AUTOS." * * *
 8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your employees or partners or members of their households.
 9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or personal affairs.